UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.                Case No: 2:17-cv-63-FtM-38CM

DOUGLAS WINLAND, SHERRY JEAN HETZ, NEWLINE HOLDINGS, LLC, LARRY HART, DABTLC5, LLC and STATE OF FLORIDA,

   Defendants.
_____/

## **OPINION AND ORDER**[1]

  This matter comes before the Court on the Government's Motion for Default Judgment filed on April 26, 2017. (Doc. 37). Defendants Douglas Winland, Sherry Jean Hetz, Newline Holdings, LLC ("Newline"), DABTLC5, LLC ("DABTLC5"), and the State of Florida have not filed a response and the time to do so has expired. Therefore, the Motion is ripe for review.

## **BACKGROUND**

  This case arises from Winland's failure to pay tax liabilities in the amount of

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

$1,115,884.38,[2] plus ongoing interest and penalties. (Doc. 37 at 9). The Government alleges that, between September and November 2007, the IRS assessed tax liabilities against Winland for the 1998 through 2003 and 2006 tax years ("2007 Tax Assessments"). (Doc. 1 at ¶ 15). Later, on August 24, 2009, the IRS made additional tax assessments against Winland for the 2004 and 2005 tax years ("2009 Tax Assessments"). (Doc. 1 at ¶ 15). To collect on these obligations, the Department of the Treasury sent Winland several notices and demands for payment. (Docs. 1 at ¶¶ 16, 41(f); 37-2 at 4-64). But Winland did not pay. (Doc. 1 at ¶ 17). Tax liens were thus created based upon the unpaid 2007 and 2009 Tax Assessments (respectively, the "2007 Tax Lien" and the 2009 "Tax Lien") (collectively the "Tax Liens"), and the Government recorded them on October 2, 2008 and November 23, 2009 in Howard County, Maryland. (Doc. 1 at ¶ 22). The Department of the Treasury also filed notices of federal tax liens in Lee County Florida against Winland on May 7, 2014, and against Hetz as Winland's "transferee and/or nominee" with respect to a residence located at 3510 NW 47th Street, Cape Coral, Florida 33993 (the "Subject Property") on December 9, 2014. (Doc. 1 at ¶¶ 36-37).

At the time of the 2007 Tax Assessments, Winland was the sole owner of a property located in Howard County, Maryland (the "Maryland Property"). (Doc. 1 at ¶ 21). In January of 2008, Winland sold the Maryland Property for $188,246.43. (Doc. 1 at ¶ 23). Then, on February 21, 2008, Winland deposited $180,246.43 into a joint checking account he shared with Hetz, with whom he also shared a close romantic relationship.

---

[2] This amount represents the amount allegedly accrued as of the filing of the Government's Motion on April 10, 2017, rather than the $1,099,119.76 that the Government alleged was due as of the filing of its Complaint. (Doc. 1 at ¶ 18).

2

(Doc. 1 at ¶¶ 25, 41(b)).  One week later, Hetz withdrew $150,000.00 from the shared account and purchased a Certificate of Deposit ("CD") in her name alone.  (Doc. 1 at ¶ 26).  On October 10, 2008, the value of Hetz's CD was $152,390.60.  (Doc. 1 at ¶ 27).  But by December 10, 2008, the CD's value had decreased to $102,994.80.  (Doc. 1 at ¶ 27).

On December 19, 2008, Hetz redeemed the CD and made two deposits into her personal checking account: one for $103,073.92 and one for $40,000.00.  (Doc. 1 at ¶ 28).  Days later, Hetz used $120,289.33 from her personal checking account to acquire the Subject Property via a special warranty deed that listed both herself and Winland as co-grantees.  (Doc. 1 at ¶¶ 5, 29-30).  The parties' ownership interests were not specifically enumerated.  (Doc. 1 at ¶ 30).

Almost a year later, on August 24, 2009, the IRS issued the 2009 Tax Assessment.  (Doc. 1 at ¶ 33).  Then, on October 29, 2009, Winland executed a quitclaim deed on the Subject Property to Hetz in return for $10.00.  (Doc. 1 at ¶ 34).  Despite the transfer, Winland continued to reside at the Subject Property until he was later incarcerated for an unrelated series of events.  (Doc. 1 at ¶ 44(g)).

Based on these allegations, the Government filed a four count Complaint against Winland that requested that the outstanding tax liabilities be reduced to judgment, the foreclosure of the Tax Liens on the Subject Property, that the Court set aside Winland's transactions leading up to and regarding the Subject Property as fraudulent, and for a determination that Hetz holds the Subject Property as Winland's nominee.  (Doc. 1).  Given the possibility that other entities would claim an interest in the property, the

Complaint also included Hetz, Hart, Newline, DABTLC5, and the State of Florida. (Doc. 1 at ¶¶ 7-11).

The Government then served Newline on February 13, 2017 (Doc. 13), Hart and the State of Florida on February 21, 2017 (Doc. 14, 16), Hetz on February 23, 2017 (Doc. 15), DABTLC5 on March 2, 2017 (Doc. 17), and Winland on March 7, 2017 (Doc. 22). Hart timely filed an Answer. (Doc. 18). On April 7, 2017, the Government filed a joint stipulation with Hart as to the priority of interests and the distribution of proceeds from the prospective sale of the Subject Property. (Doc. 32). Thereafter, when Winland, Hetz, Newline, DABTLC5, and the State of Florida (collectively, the "Default Defendants") failed to act, the Government obtained clerk's defaults. (Doc. 24, 25, 29, 30). Now, the Government seeks default judgments against the Default Defendants.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of the court must enter a clerk's default against the defendant. *See* Fed. R. Civ. P. 55(a). Second, after receiving the clerk's default, the court can enter a default judgment provided the defendant is not an infant or incompetent. *See* Fed. R. Civ. P. 55(b)(2); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, Inc. 803 F.2d 1130, 1134 (11th Cir. 1986) (stating a default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue.").

That said, a court may enter a default judgment only if "the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive

cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). The upshot of this rule is that "the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3] Consequently, when considering a motion for default judgment, courts must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" relief. *See PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-cv-408, 2014 WL 2574040, at *1 (M.D. Fla. June 9, 2014) (citation omitted).

## DISCUSSION

**I.   COUNT I: WINLAND'S TAX ASSESSMENTS**

The Complaint alleges that Winland is liable for unpaid federal income tax liabilities as laid out in the 2007 and 2009 Tax Assessments. (Doc. 1 at ¶ 15). A tax assessment is a determination that a taxpayer is liable to the Government for unpaid taxes. *United States v. Fior D'Italia Inc.*, 536 U.S. 238, 242 (2002). To reduce a tax "assessment to judgment, the Government must first prove that the assessment was properly made." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). To do so, a notice of the amount assessed and a demand for payment must be sent to each person liable for the unpaid tax. *See* 26 U.S.C. §§ 6303(a). Tax assessments are entitled to a legal presumption of correctness. *Fior D'Italia, Inc.*, 536 U.S. at 242.

Further, the Internal Revenue Code provides that

---

[3] In *Bonner v. City of Prichard*, 661 F. 2d 1206, 1208 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit issued before the close of business on September 30, 1981.

5

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The tax lien arises automatically "by operation of law 'at the time the assessment is made.'" *United States v. Saccullo*, No. 2:16-cv-155-FtM-29CM, 2017 WL 347553 *2 (M.D. Fla. Jan. 24, 2017) (quoting 26 U.S.C. § 6322).

Upon consideration, the Complaint has sufficiently alleged that Winland is liable to the Government for unpaid tax liabilities. First, the Complaint includes a detailed chart that illustrates the dates of the IRS's assessments, the amounts assessed, and the type of assessments made for the 1998 through 2006 tax years. (Doc. 1 at ¶ 15). These assessments indicated that Winland owed the Government a substantial sum of money for deficiencies and additions regarding his tax filings. (Doc. 1 at ¶ 15). The Complaint also alleges that the Department of the Treasury sent Winland several notices and demands for payment, but that Winland failed to pay.[4] (Doc. 1 at ¶¶ 16-17). And while the Complaint stated that Winland's overall outstanding tax liability as of the date of filing was $1,099,119.76, (Doc. 1 at ¶ 18), that figure has grown with the addition of interest and time to $1,115,884.38 as of the filing of the Government's Motion. (Doc. 37 at 9). Consequently, ample grounds exist to merit the reduction of Winland's outstanding tax liabilities to judgment in the amount of $1,115,884.38 plus interest that accrued after the Government filed its Motion on April 10, 2017

---

[4] These allegations were thereafter substantiated by the Government's attachment of the Certificate of Assessments, Payments and Other Specified Matters to its Motion. (Doc. 37-2).

## II.　FORECLOSURE

Next, the Complaint alleges the Tax Liens attached to the Subject Property because the Government can trace the 2007 Tax Liens to Winland's interest in his Maryland Property and thereafter to the encumbered funds used to purchase the Subject Property. (Doc. 1 at ¶ 35). Moreover, the Government alleges that the 2007 and 2009 Tax Liens encumbered Winland's interest as co-grantee of the Subject Property. (Doc. 1 at ¶ 33). The Court agrees.

The Internal Revenue Code provides that failure to pay tax liabilities after notice and demand of payment creates a lien "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The language "all property and rights" is broad enough "to reach every interest in the property that a taxpayer might have." *United States v. Nat'l Bank of* Commerce, 472 U.S. 713, 719–20 (1985); *see also* *Atlantic States Const., Inc. v. Hand*, 892 F.2d 1530, 1534 (11th Cir. 1990) (holding a lien may attach to the taxpayer's "property [that is] acquired after the tax lien arises."). Moreover, when a lien is created, and the asset to which the lien applies is sold, "[t]he lien reattaches to the thing and to whatever is substituted for it." *Phelps v. United States*, 421 U.S. 330, 334–35 (1975). Thereafter, the District Court can foreclose the lien and force a sale for the Government's benefit. *See United States v. Rodgers*, 461 U.S. 677, 692–94 (1983); *see also* 26 U.S.C. § 7403(c). Such an act consists of the sale of not only "the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any claim or interest in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *Id.* (internal quotations omitted).

Accordingly, the 2007 Tax Lien attached to the Maryland Property because at the time of the 2007 Tax Assessment, Winland held it as the sole titleholder. *See* 26 U.S.C. § 6321. Upon selling the Maryland Property, the 2007 Tax Liens attached to the proceeds of the sale. *See Phelps*, 421 U.S. at 334–35. Thereafter, when Winland transferred the proceeds of the sale to Hetz, the 2007 Tax Lien followed. *See United States v. Bess*, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*."); *see also United States v. Domenico*, No. 8:09-CV-1282-T-26AEP, 2010 WL 3029019, at *2 (M.D. Fla. Apr. 29, 2010) ("Once a federal tax lien attaches to property belonging to a taxpayer, it follows that property into the hands of any transferee"). Finally, the 2007 Tax Lien then attached to the Subject Property when Hetz purchased it with the encumbered proceeds. *See Phelps*, 421 U.S. at 334–35 ("[T]he lienholder . . . may follow the [encumbered] proceeds wherever they can distinctly trace them.").

In addition, the 2007 and 2009 Tax Lien attached directly to the Subject Property because of Winland's interest as co-grantee. Specifically, the 2007 Tax Lien attached to Winland's interest in the Subject Property as after-acquired property. *See Atlantic States Const., Inc.*, 892 F.2d at 1534. Similarly, the 2009 Tax Lien attached to Winland's interest as then-owned property. *See Nat'l Bank of Commerce*, 472 U.S. at 719–20. And despite Winland's subsequent transfer of his interest by quitclaim deed on the Subject Property to Hetz, the 2009 and 2007 Tax Liens remained as to the Subject Property. *See Bess*, 358 U.S. at 57. By failing to answer the Complaint, Winland is deemed to have admitted the factual allegations lodged against him. *Tyco Fire & Sec., LLC*, 218 F. App'x at 863.

And upon review, the allegations are sufficient to support the foreclosure of the Tax Liens on the Subject Property.[5]

## III. RIGHTS OF THE REMAINING DEFENDANTS

In an action to enforce a lien in favor of the United States "[a]ll persons having liens upon or claiming any interest in the property involved in shall be made parties thereto." 26 U.S.C. § 7403(b). After the plaintiff duly notifies the parties of the action, "the court shall . . . proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." *Id.* § 7403(c).

In line with the statutory guidance, the record reveals that the Government provided notice to Hetz, Newline, DABTLC5 and the State of Florida by naming them as parties and by serving them with process. (Docs. 1, 13, 15, 16, 17). Thereafter, each failed to answer and defend their interest. As a result, the Government argues in its Motion, without citation to authority, that the failure to answer merits a decision that Hetz, Newline, DABTLC5 and the State of Florida have no interest at all in the Subject Property. (Doc. 37 at 9). But the Court lacks the information necessary to reach such a conclusion.

For one thing, the Complaint states that DABTLC5 and Newline are the respective certificate holders of the Subject Property's delinquent property taxes for the 2014 and 2015 tax years, and that each may claim an interest in the Subject Property. (Doc. 1 at ¶¶ 8, 9). For another, the Complaint alleges that the State of Florida recorded a judgment

---

[5] The Government's Complaint sets forth several additional claims in which they assert that Winland violated the Florida Uniform Fraudulent Transfer Act, and specifically Florida Statute 726.105 and 726.106, through the inclusion of Hetz as a co-grantee of the Subject Property, as well as her ultimate acquisition of same via quitclaim deed. That said, because the Court is satisfied that the Winland's tax liabilities can be reduced to judgment, and that the Subject Property can be foreclosed, it need not address the Government's other claims.

against Winland in April 2012 relating to public defense attorney costs, and it may also claim an interest in the Subject Property. As a result, although the Government has presented sufficient grounds to justify a reduction of Winland's federal income tax liabilities to judgment, and has satisfied the general grounds for the foreclosure of the Subject Property, the record does not currently merit a final determination of the merits of all claims to, and liens upon, the Subject Property.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff's Motion for Default Judgment (Doc. 37) against Defendants Douglas Winland, Sherry Jean Hetz, Newline Holdings, LLC, and DABTLC5, LLC, and the State of Florida is **DENIED with leave to renew.**

(2) The Government will have up to and including **September 5, 2017** to file a renewed motion that supplements the record with information and argument as to its claim that Hetz, Newline, DABTLC5 and the State of Florida have no interest in the Subject Property.

**DONE** and **ORDERED** in Fort Myers, Florida this 16th day of August, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record